UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE O. ARTEAGA,<br><br>    Plaintiff,<br><br> v.<br><br>JOHN DOES #2-15,<br><br>    Defendants. | Case No. 1:25-cv-00357-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER<br><br>(ECF Nos. 17, 20, 22)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

   Plaintiff Jose O. Arteaga is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 41 U.S.C. § 1983. Plaintiff originally filed a one-hundred-and-seventy-one-page complaint on October 11, 2022, alleging numerous claims against numerous defendants.[1] (ECF No. 1). On February 25, 2025, the district judge ordered that "Plaintiff's claims against John Doe defendants based on events after plaintiff's placement in administrative segregation in February 2019 [ECF No. 1 at p. 14-21] shall be severed from this action and proceed in a new action." (ECF No. 5 at p. 2). As such, the district judge ordered the underlying case be opened to address these severed claims. (*Id.*).

---

[1] Plaintiff's complaint was first filed in *Arteaga v. Garcia, et al.*, 1:22-cv-1292-KES-EPG (PC) (E.D. Cal.).

On January 22, 2026, the Court screened the severed complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 17). The Court gave Plaintiff thirty days to file a first amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at p. 10). Thereafter, the Court granted Plaintiff a thirty-day extension to respond to the screening order, warning that "Plaintiff must file a response to the Screening Order **no later than April 10, 2026,** or the Court will issue findings and recommendations that this case be dismissed." (ECF No. 20 (emphasis in original)).

On April 2, 2026, Plaintiff filed a Motion to Proceed Against Doe's Real Name and Stand on Original Claims. (ECF No. 21). The Court reviewed the motion and found that it did not relate to the claims pending in this case and provided leave for Plaintiff to file an amended complaint concerning the issues of administrative segregation. (ECF No. 22). Granting additional time, the Court ordered that "Plaintiff must file an amended complaint until **no later than May 4, 2026**," warning "[o]therwise, the Court will recommend dismissal of the complaint for the reasons stated in its Screening Order." (*Id.* emphasis in original)).

The extended deadline to respond to the screening order has expired, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons given below, the Court will recommend that Plaintiff's case be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 14), the Court may screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     SUMMARY OF PLAINTIFF'S COMPLAINT

As noted earlier, this case only concerns Plaintiff's claims arising after he was placed in administrative segregation in February 2019, which were severed from a separate case. Accordingly, the Court only summarizes the events described in the complaint after Plaintiff's placement in administrative segregation in February 2019.

Plaintiff alleges that, in February of 2019, he was placed in administrative segregation for a period of about eight months. During this time, Plaintiff suffered "painful, t[ortu]ous, constant retaliatory practices by then correctional officers responsible for passing out state meals" and "also the staff who are responsible for giving this prisoner[']s medical attention." (ECF No. 1 at p. 16). Plaintiff alleges that he was continuously ill from the "state food" served to him and that he would report this to "medical staff," but they ignored any 7362 (medical) request regarding illness from the food. (*Id.*). Plaintiff was "forced to file a petition for writ of habeas corpus as a desperate intent to make them stop the abuses mistreatment of them tampering with [Plaintiff's] state meals." (*Id.* at p. 20). Plaintiff developed a rash all over his body and was taken to a dermatologist due to the painful rash and hair loss. (*Id.* at p. 16). Plaintiff also suffered stomach

3

pains, headaches, and intestinal pain in the liver and kidney. Plaintiff alleges that these reactions are caused by chemical contaminants. (*Id.*). Plaintiff alleges that medical would act as if Plaintiff was not experiencing these symptoms. Plaintiff's only effective medicine was to force himself to vomit the food. (*Id.*).

Plaintiff stopped consuming a lot of his provided meals and was forced to purchase food from the canteen prison store to stay alive. (*Id.* at p. 17). Plaintiff was not aware of how long he would be housed in administrative segregation. (*Id.*). At the time, Plaintiff hoped that the money in his account would not run out. However, when Plaintiff was ordered to pay a court fee in another § 1983 civil case, he was unable to do so. (*Id.*). Plaintiff was cautious to not run out of money while in administrative segregation. Plaintiff was not able to make the court aware of his situation for fear of continued and worsening retaliation. (*Id.*). A prior civil rights complaint was dismissed without prejudice due to Plaintiff's inability to pay the filing fees requested. Thus, Plaintiff was forced to wait for a better time to file the § 1983 action. (*Id.* at p. 17).

Due to the cruel and continuous retaliation against Plaintiff, he was forced to file a petition for a writ of habeas corpus, (*see id.* at 49-51 (Plaintiff's Exhibit # 3)), in a desperate attempt to make them stop the abuses, mistreatment, and tampering of Plaintiff's state meals that Plaintiff was constitutionally entitled to. (*Id.* at p. 20). But even this request for justice did not stop the mistreatment. The abuses continued without any regard to prison rules, human suffering, or the consequences of violating prison policy. Although Plaintiff filed a CDC-602 complaint, it did not work to stop the constant retaliatory practices. (*Id.* at p. 20).

One of the exhibits attached to the complaint is a dermatology report dated September 3, 2019, which concerns Plaintiff's reports of "a rash located on the scalp, abdomen, chest, groin and legs," "hair loss," and "nail changes." (*Id.* at p. 45-47). According to the document, "the diagnosis is most consistent with alopecia reata,"[2] and management options were "topical and systemic corticosteroids, intralesional corticosteroids, phototherapy." (*Id.* at p. 46). It also reports and Plaintiff "opted to proceed with the following treatment: 1. Requesting ILK to scalp at

---

[2] Although not included in the complaint, the Court notes that the Cleveland Clinic defines this as "Alopecia areata is an autoimmune disease that attacks your body's hair follicles, causing patchy hair loss." https://myclevelandclinic.org/-/scassets/images/org/health/articles/12423-clopecia-areata, visited on January 21, 2026.

4

follow-up[;] 2. Clobeatsol 0.05% solution."

Plaintiff also attaches a 602 grievance form dated July 30, 2019 (*see id.* at pp. 52-65 (Plaintiff's Exhibit #4)), and fifty-nine 7362 California Department of Corrections and Rehabilitation ("CDCR") Medical Request Form copies that Plaintiff filed (s*ee id.* at pp. 69-154 (Plaintiff's Exhibit #6)).[3] (*Id.* at p. 21).

Plaintiff asserts his claims against correctional officers identified as "John Doe #2-12" who were "responsible for making assure [sic] that prisoners received untampered, healthy state meals were instead making sure that Plaintiff receive[d] contaminated, harmful, and bad meals to cause sickness and mistreatment" as retaliation for filing previous grievances. (*Id.* at p. 5). Plaintiff also asserts claims against medical staff "John Does #13 through 15" who worked in administrative segregation in Corcoran." (*Id.* at p. 6).

### III.   ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state

---

[3] The Court notes that the documents included in this exhibit are mostly illegible.

5

law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. Conditions of Confinement in Violation of the Eighth Amendment

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

6

Two requirements must be met to show an Eighth Amendment violation. *Farmer,* 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer,* 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

"Adequate food is a basic human need protected by the Eighth Amendment." *Keenan,* 83 F.3d at 1091. "[I]mates rely on prison officials to provide them with adequate sustenance on a daily basis." *Foster v. Runnels,* 554 F.3d 807, 814 (9th Cir. 2009). However, the food served in prisons is only required to be "adequate to maintain health" and does not need to be "tasty or aesthetically pleasing." *LeMaire v. Maass* 12 F.3d 1444, 1456 (9th Cir. 1993).

Plaintiff's complaint fails to state a cognizable claim for violation of conditions of confinement under these legal standards. Plaintiff repeatedly asserts that he received "contaminated harmful and bad meals to cause sickness." However, Plaintiff fails to provide any facts supporting this claim. Plaintiff does not allege that he saw anyone contaminate the food. Plaintiff does not allege that he noticed anything about the food that indicated that it was contaminated. Plaintiff does not allege that he heard anyone say that the food was contaminated. Plaintiff does not allege that any doctor told him that he was getting ill due to contaminated food. On the contrary, the one medical document that is attached diagnosed Plaintiff's illness as alopecia reata and provided Plaintiff with topical medication and steroids to treat it. Plaintiff also fails to provide sufficient facts regarding the allegedly contaminated food. Plaintiff does not describe any meals with any specificity, such as what was provided, when it was provided, and how Plaintiff reacted to the food.

\\\

7

Plaintiff also fails to allege any facts indicating that any defendant caused the food to be contaminated, or that they did so intentionally. Plaintiff does not identify any defendant, either by name or description. Instead, he names "John Doe #2-12" as defendants because they were "responsible for making assure [sic] that prisoners received untampered, healthy state meals" but "instead [were] making sure that Plaintiff receive[d] contaminated, harmful and bad meals to cause sickness and mistreatment" to retaliate and torture Plaintiff. (*Id.* at p. 5). But this description does not identify any person, whether by name or characteristics. Nor does it provide any facts that, if true, would indicate that such person contaminated his food. Plaintiff also fails to state any facts that would show that any person acted with deliberate indifference to his safety.

For these reasons, the Court recommends dismissal for failure to state a cognizable claim that unidentified Doe Defendants caused all of Plaintiff's food in administrative segregation to be contaminated.

### C. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference to a prisoner's medical issue is established only where the Defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)), overruled on other grounds *by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett,* 439 F.3d at 1096 (citation omitted).

\\\

8

As to the subjective standard, a prison official or prison medical provider acts with "deliberate indifference…only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 101, 1057 (9th Cir. 2004) (citation omitted). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how serious the risk." *Gibson*, 290 F.3d at 1188 (citation omitted).

"[T]he indifference to a [prisoner's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this [claim]." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citations omitted). "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. Cal. Dep't. of Corrections and Rehabilitation*, 726 F.3d 1062, 1082 (9th Cir. 2013).

Plaintiff's complaint states that "Plaintiff was continuously getting sick and ill from the state food given to him by custody which he would report this to medical staff in vain, since they would ignore any (7362) regarding getting sick from meals." (ECF No. 1, at p. 16). However, this allegation fails to set forth a constitutional claim for deliberate indifference to serious medical needs. It does not identify any medical provider who purposefully failed to treat his medical condition. On the contrary, Plaintiff alleges and attaches evidence of seeing a dermatologist who treated his symptoms. Nor does Plaintiff allege that any medical provider believed that he was eating contaminated food, had the ability to change that food, and yet failed to do so.

As before, Plaintiff also fails to identify any specific person, either by name or description. Instead, Plaintiff sues "John Does #13 through 15 who worked in administrative segregation in Corcoran." (*Id.* at p. 6). This description is not sufficient to identify any person who acted with deliberate indifference to his serious medical needs.

Accordingly, the Court recommends dismissal for failure to state a cognizable claim for deliberate indifference to serious medical needs against John Doe Defendants #13-15.

### D.  Retaliation in Violation of the First Amendment

Plaintiff repeatedly states that he suffered from retaliation while in administrative segregation.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes*, 408 F.3d at 567–68 (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69) (emphasis in original). "Evidence of his motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual." *Barth v. Montejo*, No. 2:19-CV-1874 DB P, 2020 WL 73407, at *2 (E.D. Cal. Jan. 7, 2020).

Plaintiff's complaint fails to state any facts supporting a claim for retaliation under these constitutional standards. Plaintiff does not describe any adverse action by any specific person. Nor does he allege any facts indicating that someone took an adverse action due to Plaintiff engaging in constitutionally protected conduct. Indeed, as with the other claims, Plaintiff fails to identify any specific person who allegedly engaged in retaliation.

The Court recommends dismissal for failure to state a claim for retaliation in violation of the First Amendment.

### IV.    FAILURE TO PROSECUTE AND COMPLY WITH COURT ORDER

The Court will likewise recommend dismissal based on Plaintiff's failure to prosecute this case and to comply with the Court's orders extending the time to respond to the screening order. (ECF Nos. 20, 22).

> In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the

public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Therefore, the first factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants. . . ." *Id.* (citations omitted). Plaintiff has failed to respond to the Court's orders granting extensions of time to respond to the screening order. (ECF Nos. 20, 22). This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's *in forma pauperis* status, it appears that monetary sanctions are of little use to prompt him to comply with future orders. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Further, as noted above, Plaintiff has failed to state a claim or respond to the Court's screening order despite being given the relevant legal standards and the opportunity to file an amended complaint. Thus, the lack of any viable claim

11

supports a dismissal with prejudice rather than a lesser sanction. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this final factor weighs against dismissal. *Id.*

After weighing the factors, the Court concludes that dismissal with prejudice is appropriate.

## V.      ORDER, CONCLUSION, AND RECOMMENDATIONS

Accordingly, IT IS RECOMMENDED as follows:

1.  This action be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

2.  The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 20, 2026**                    /s/ Erica P. Grosjean
                                                   UNITED STATES MAGISTRATE JUDGE